PD-0406-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/27/2015 7:29:04 PM
Accepted 4/29/2015 10:33:20 AM
ABEL ACOSTA
CLERK

PD-0406-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**EMILIO RODRIGUEZ, Petitioner/Appellant**
**v.**
**THE STATE OF TEXAS, Respondent/Appellee**

---

**PETITION FOR DISCRETIONARY REVIEW**
**BY PETITIONER/APPELLANT**

---

ON APPEAL FROM THE SEVENTH COURT OF APPEALS' JUDGMENT
AND OPINION IN CAUSE NO. 07-14-00202-CR

TRIAL COURT CAUSE NO. 2014-401,172
IN THE 364TH DISTRICT COURT
LUBBOCK COUNTY, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

April 29, 2015

ABEL ACOSTA, CLERK

April 27, 2015

**JULIE GOEN PANGER**
Counsel for Petitioner/Appellant
The Kiechler Law Firm
619 Broadway Street
Lubbock, Texas 79401
Telephone: (806) 712-2889
Facsimile: (808) 712-2529
State Bar Number: 24069793
Email: julie@thelubbocklawyer.com

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**HON. BRAD UNDERWOOD**................................................................... Trial Court Judge
**HON. JOHN J. MCCLENDON**...................... Trial Court Judge Presiding by Assignment
**HON. CECIL G. PURYEAR**........................... Trial Court Judge Presiding by Assignment
364th District Court
Lubbock County, Texas

**EMILIO RODRIGUEZ**...................................................................... Petitioner/Appellant

CHARLES S. CHAMBERS ........................................................... Trial Counsel for Petitioner
Attorney at Law
Post Office Box 1469
Lubbock, Texas  79408

JULIE GOEN PANGER ...................................................... Appellate Counsel for Petitioner
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas  79401

**THE STATE OF TEXAS** ................................................................... Respondent/Appellee

JASON CORLEY, AARON MONCIBAIZ ................................. Trial Counsel for Respondent
Lubbock County District Attorney's Office
904 Broadway Street, 2nd Floor
Post Office Box 10536
Lubbock, Texas  79408

JEFFREY S. FORD.......................................................... Appellate Counsel for Respondent
Lubbock County District Attorney's Office
904 Broadway Street, 2nd Floor
Post Office Box 10536
Lubbock, Texas  79408

# TABLE OF CONTENTS

Identity of Parties and Counsel..................................................................................i

Index of Authorities...............................................................................................iii

Statement Regarding Oral Argument...................................................................... v

Statement of the Case ........................................................................................... v

Statement of Procedural History ........................................................................... v

Grounds for Review............................................................................................... vi

Argument............................................................................................................... 1

1. **Issue One:** Whether the Court of Appeals misconstrued the Sixth Amendment right to counsel and failed to apply *United States v. Cronic* when it held that Rodriguez did not receive ineffective assistance of counsel after his trial counsel was absent from the courtroom during portions of the State's direct examination of the lead investigator in Rodriguez's case. 5 R.R. 43-54; Op. at 19-24.

Prayer ................................................................................................................... 7

Certificate of Service ............................................................................................ 8

Certificate of Compliance...................................................................................... 8

Court of Appeals' Opinion and Judgment........................................................ Appendix A

# INDEX OF AUTHORITIES

## CASES

*Bell v. Cone,*
 535 U.S. 685 (2002) ................................................................................................ 3

*Brooks v. Tennessee,*
 406 U.S. 605 (1972) ................................................................................................ 3

*Cuyler v. Sullivan,*
 446 U.S. 335 (1980) ................................................................................................ 3

*Ferguson v. Georgia,*
 365 U.S. 570 (1961) ................................................................................................ 3

*Geders v. United States,*
 425 U.S. 80 (1976) .................................................................................................. 3

*Gideon v. Wainwright,*
 372 U.S. 335 (1963) ................................................................................................ 2

*Hamilton v. Alabama,*
 368 U.S. 52 (1961) .................................................................................................. 3

*Herring v. New York,*
 422 U.S. 853 (1975) ................................................................................................ 3

*Maine v. Moulton,*
 474 U.S. 159 (1985) ................................................................................................ 2

*Mickens v. Taylor,*
 535 U.S. 162 (2002) ................................................................................................ 3

*Moran v. Burbine,*
 475 U.S. 412 (1986) ................................................................................................ 2

*Strickland v. Washington,*
 466 U.S. 668 (1984) ......................................................................................... 1, 2, 4

*United States v. Cronic,*
   466 U.S. 648 (1984) ......................................................................*passim*

*United States v. Wade,*
   388 U.S. 218 (1967) ........................................................... 4

*White v. Maryland,*
   373 U.S. 59 (1963) ........................................................... 3, 4

*Williams v. Kaiser,*
   323 U.S. 471 (1945) ........................................................... 3

*Woods v. Donald,*
   575 U.S. ___ (2015) (slip op.)........................................... 5, 6

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. amend. VI ........................................................... 2

## STATEMENT REGARDING ORAL ARGUMENT

Rodriguez requests that oral argument be granted, because it will assist the Court in resolving the grounds presented for review.

## STATEMENT OF THE CASE

This case concerns the Sixth Amendment right to counsel, and, specifically, whether the representation Rodriguez received at trial was so inadequate as to violate his constitutional right.

On direct appeal, Rodriguez argued that he received ineffective assistance of counsel when, among other allegations, his trial counsel left the courtroom twice during the State's direct examination of the lead investigator in Rodriguez's case. The jury found Rodriguez guilty of robbery, and based upon prior convictions, sentenced him to prison for a term of ninety-nine (99) years. Rodriguez timely gave notice of appeal.

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Seventh Court of Appeals in Amarillo, Texas, affirmed the trial court judgment in an Opinion dated February 25, 2015. In the Opinion, Justice Hancock noted that the trial counsel's absence during a portion of the trial fell beneath any objective standard of reasonableness under prevailing professional norms; however, the Court held that Rodriguez was not prejudiced by the trial counsel's actions. Rodriguez did not file a motion for rehearing.

# GROUNDS FOR REVIEW

1. Whether the Court of Appeals misconstrued the Sixth Amendment right to counsel and failed to apply *United States v. Cronic* when it held that Rodriguez did not receive ineffective assistance of counsel after his trial counsel was absent from the courtroom during portions of the State's direct examination of the lead investigator in Rodriguez's case. 5 R.R. 43-54; Op. at 19-24.

To the Honorable Judges of the Court of Criminal Appeals:

Petitioner, Emilio Rodriguez, by and through his attorney on appeal, files this Petition for Discretionary Review. In support of his request for review, Petitioner would respectfully show the Court the following:

## ARGUMENT

**Issue One: Whether the Court of Appeals misconstrued the Sixth Amendment right to counsel and failed to apply *United States v. Cronic* when it held that Rodriguez did not receive ineffective assistance of counsel after his trial counsel was absent from the courtroom during portions of the State's direct examination of the lead investigator in Rodriguez's case. 5 R.R. 43-54; Op. at 19-24.**

Reason for Granting Review

The court of appeals has construed the Sixth Amendment right to counsel in such a way that the trial counsel's act of leaving the courtroom twice during the State's cross-examination of the lead investigator in Rodriguez's case did not constitute ineffective assistance of counsel. Specifically, the court of appeals held that, although the trial counsel's actions fell below a reasonable standard of professionalism under the *Strickland v. Washington* test, the record "does not demonstrate any prejudice to appellant during the absence of trial counsel." Op. at 24. The court of appeals should have found a presumption of prejudice in the actions of Rodriguez's attorney pursuant to *United States v. Cronic*.

Sixth Amendment Right to Counsel

The United States Supreme Court has repeatedly recognized that "[a]n accused's right to be represented by counsel is a fundamental component of our criminal justice system." *United States v. Cronic*, 466 U.S. 648, 653 (1984); U.S. CONST. AMEND. VI; see also *Gideon v. Wainwright*, 372 U.S. 335 (1963). The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. The purpose of the Sixth Amendment "is to assure that . . . the accused shall not be left to his own devices in facing the 'prosecutorial forces of organized society.'" *Moran v. Burbine*, 475 U.S. 412, 430 (1986) (quoting *Maine v. Moulton*, 474 U.S. 159, 170 (1985)).

*Strickland* and *Cronic* Decisions

In 1984, the Supreme Court issued two decisions that provide the modern framework for evaluating claims of ineffective assistance of counsel. In *Strickland v. Washington*, the Court held that, generally, a defendant claiming ineffective assistance of counsel must show that his counsel's performance was deficient *and* prejudicial. *Strickland*, 466 U.S. 668, 686-87 (1984) (emphasis added). However, the Court noted that "[i]n certain Sixth Amendment contexts, prejudice is presumed," and cited *United States v. Cronic. Strickland*, at 692. In *Cronic*, the Court acknowledged the general *Strickland* rule but indicated that "[t]here are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. 648, 658 (1984).

The Supreme Court identified three situations in which "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry [of prejudice to the defendant] is unnecessary" and instead the courts should simply presume prejudice. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). One of those situations, which is relevant in this case, is when "the accused is denied counsel at a critical stage of his trial . . ." *Cronic*, at 659-60. The Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical state of the proceeding." *Cronic*, 466 U.S. at 659 n. 25.[1] The absence or denial of counsel need not be caused by the State – a presumption of prejudice applies even where "the constraints on counsel . . . are entirely self-imposed." *Cronic*, 466 U.S. at 662 n. 31 (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)).

The Supreme Court indicated that a critical state of a criminal proceeding was one that held "significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 695-96 (2002). The *Bell* decision cited to a significant body of the Supreme Court's law, in which the Court looked to whether the proceeding is a "critical stage" to apply a presumption of prejudice to counsel's absence. *See, e.g.*, *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961) (holding that arraignment is a critical stage and that a critical stage

---

[1] The *Cronic* decision cited decades of decisions that led it to this conclusion, including *Geders v. United States*, 425 U.S. 80 (1976); *Herring v. New York*, 422 U.S. 853 (1975); *Brooks v. Tennessee*, 406 U.S. 605 (1972); *Hamilton v. Alabama*, 368 U.S. 52 (1961); *White v. Maryland*, 373 U.S. 59 (1963) (per curiam); *Ferguson v. Georgia*, 365 U.S. 570 (1961); *Williams v. Kaiser*, 323 U.S. 471 (1945).

is one where "[a]vailable defenses may be irretrievably lost, if not then and there asserted . . ."); *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam) (determining that the "preliminary hearing was a critical stage). The Supreme Court has specifically articulated that the trial of a defendant is a critical stage of a criminal proceeding. *See United States v. Wade*, 388 U.S. 218, 227 (1967) ("The presence of counsel as such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution.").

In this case, Rodriguez's trial counsel absented himself from the courtroom during a critical stage of the criminal proceeding – Rodriguez's trial on charges of robbery. 5 R.R. 43-45. The evidence taken during trial counsel's absence was adversarial in nature and involved the testimony of a key prosecution witness. During trial counsel's absence, the State questioned the lead investigator in Rodriguez's case on direct examination. 5 R.R. 45. Sixteen (16) questions were asked by the State and answered by the investigator while Rodriguez had no representation in the courtroom. 5 R.R. 45. This evidence was probative of Rodriguez's culpability and was introduced to implicate Rodriguez in the offense.

The court of appeals incorrectly held that Rodriguez did not receive ineffective assistance of counsel under the second prong of the *Strickland* test. Instead, the court of appeals should have held that the trial counsel's actions were presumptively prejudicial pursuant to the *Cronic* decision. The facts of this case fall within one of the

three situations in which *Cronic* applies – Rodriguez was denied counsel at a critical stage of his criminal case.

*Woods v. Donald* Decision

On March 30, 2015, the United States Supreme Court issued a *per curiam* opinion in a case with facts similar to those in this case. *Woods v. Donald*, 575 U.S. ___, ___ (2015), (*per curiam*) (slip op.). Donald was charged with felony murder and two counts of armed robbery, and he was tried with two of his four co-defendants. *Id.* (slip op., at 2). During trial, the State attempted to admit evidence regarding telephone calls between three of the co-defendants, not including Donald. *Id.* Donald's attorney did not object to the evidence and then left the courtroom while the trial briefly recessed. *Id.* Donald's attorney did not return to the courtroom after the recess. *Id.* Initially, the judge decided to wait for Donald's attorney to return, but he then chose to proceed based upon the attorney's statement that the evidence did not relate to Donald specifically. *Id.* After about ten minutes, Donald's attorney returned to the courtroom. *Id.* Donald was subsequently found guilty on all three counts. *Id.*

As here, Donald argued on direct appeal that he was denied his Sixth Amendment right to effective assistance of counsel when the trial attorney left the courtroom and did not return for a portion of the trial, albeit a short portion. *Id.* (slip op., at 3). His claim was rejected by the Michigan Court of Appeals, and the Michigan Supreme Court denied review. *Id.* Donald was granted federal habeas relief in the United States District Court for the Eastern District of Michigan, and the Sixth

Circuit affirmed. *Id.* The Sixth Circuit held that the Michigan Court of Appeals' decision was both contrary to and involved an unreasonable application of the United States Supreme Court's decision in *Cronic. Id.*

The Supreme Court reversed the Sixth Circuit's judgment with regard to federal habeas review and did not express a view on the merits of Donald's Sixth Amendment argument. *Id.* (slip op., at 7). The Court did, however, note that it had "never addressed whether the rule announced in *Cronic* applies to testimony regarding co-defendants' actions." *Id.* (slip op., at 5). Rather, the Court noted that in *Cronic*, it "cited earlier cases finding prejudice where "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* (citing *Cronic*, 466 U.S., at 659 n. 25). While not holding as such, the Court's commentary regarding counsel's absence during a critical stage of a defendant's criminal proceeding supports Rodriguez's assertion that he received ineffective assistance of counsel. At trial, Rodriguez's attorney left the courtroom twice while the State was directly examining the lead investigator on Rodriguez's case about Rodriguez's actions. The testimony during trial counsel's absence related directly and specifically to Rodriguez.

Therefore, based upon the Supreme Court's decision in *Cronic*, the actions of Rodriguez's attorney during trial were *per se* prejudicial to Rodriguez.

## PRAYER

For the reasons set forth above, Petitioner Emilio Rodriguez requests that this Court grant his Petition for Discretionary Review and order a brief on the merits of this case to further consider reversing the judgment of the Amarillo Court of Appeals with regard to Rodriguez's ineffective assistance of counsel at trial.

Respectfully submitted,

___/s/ Julie Goen Panger_____
Julie Goen Panger
Attorney for Appellant
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas 79401
Telephone (806) 712-2889
Facsimile (806) 712-2529
Email: julie@thelubbocklawyer.com
State Bar Number 24069793

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following parties by electronic service on April 27, 2015:

> JEFF FORD
> Lubbock County District Attorney's Office
> Appellate Division, Chief
> jford@co.lubbock.tx.us

___/s/ Julie Goen Panger_____
Julie Goen Panger

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4, the undersigned attorney of record certifies that the Petition for Discretionary Review contains 1,593 words, excluding those words identified as not being counted in TEX. R. APP. P. 9.4(i)(1), and was prepared on Microsoft Word 2013®.

___/s/ Julie Goen Panger_____
Julie Goen Panger

# Appendix A



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00202-CR

EMILIO RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2014-401,172, Honorable Cecil G. Puryear, Presiding

February 25, 2015

OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Emilio Rodriguez, was convicted of robbery[1] enhanced by two prior felony convictions.[2] The jury sentenced appellant to 99 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant has perfected his appeal. By this appeal, appellant contends that (1) he was denied effective assistance of counsel; (2) the trial court's imposition of the 99 year sentence

---

[1] See TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2011).

[2] See id. § 12.42(d) (West Supp. 2014).

amounted to cruel and unusual punishment under the Eighth Amendment to the United States Constitution; Article I, Section 13 of the Texas Constitution; and Article 1.09 of the Texas Code of Criminal Procedure; and (3) the trial court erred in allowing a specified extraneous offense to be admitted into evidence without proper notice to appellant. For the reason hereinafter set forth, we will affirm the judgment of conviction.

Factual and Procedural Background

The facts of this case are undisputed. On May 11, 2013, at a convenience store in Lubbock, Texas, appellant attempted to steal the purse of the complaining witness, Shonda Lozoya. Lozoya retained a hold on her purse and, in the resulting struggle, she was pulled forcefully to the ground causing some injuries to her person. When appellant realized that he would not be able to get the purse, he attempted to flee the scene. However, three bystanders tackled appellant and held him on the ground until the police arrived.

After the police arrived, appellant was taken into custody by Officer Jason Cruce. Officer Cruce administered appellant's *Miranda*[3] rights to him and appellant made an oral statement to Cruce wherein appellant admitted he had tried to snatch Lozoya's purse. Appellant denied he had hit Lozoya but otherwise admitted to the offense. Appellant's oral statement contained acceptance of responsibility for the act and attempted to explain his actions by telling the officer that his wife was in Louisiana and he was broke but was attempting to get money to join her. Further, appellant attempted

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed 2d 694 (1966)

2

to excuse his act by telling the officer he was suffering from depression and anxiety attacks.  Appellant was subsequently indicted for robbery.

Prior to appellant's trial, the State filed a motion seeking to amend the indictment. The amendment alleged that appellant caused bodily injury to Lozoya by striking her with his hand or by causing her to strike the ground.  The trial court granted the motion to amend the indictment, and the indictment was amended to reflect the two different manners and means of bodily injury to Lozoya.

Appellant's trial on the merits commenced on March 31, 2014.  Prior to commencement of voir dire, the State, during a bench conference, advised the trial court that they were aware of an allegation against the lead officer, Cruce, regarding a failure to follow department policies.  As explained at the bench conference, the officer had called in sick but later was identified in a social media posting as being out to dinner.  As of the date of appellant's trial, Cruce was in a grievance proceeding concerning a letter of reprimand he received for calling in sick.  The appellant's trial attorney was made aware of this proceeding.  In the ensuing discussion, appellant's trial counsel advised the trial court that he did not think he would "get any mileage out of that" and did not intend to go into it.  The trial court advised all counsel that it would treat the grievance topic as material covered by a motion in limine and, if appellant's counsel intended to go into the matter, he should first approach the bench and advise the court and obtain a ruling on its admissibility.

During the trial on the merits, the State introduced the convenience store's surveillance video into evidence, State's Exhibit 2 (S-2).  Trial counsel took the store's

3

records custodian on voir dire examination. During that examination, trial counsel asked if the video could be viewed in real time as opposed to a series of still pictures. Upon being advised it could be viewed in real time, counsel admitted he only viewed the video as a series of still images.

Later during the trial, the lead officer, Cruce, was testifying and, during his testimony, the State introduced the motor vehicle recording (MVR) as State's Exhibit 3 (S-3). While the exhibit was being played for the jury, appellant's trial counsel left the courtroom, returned, and then left again. After the exhibit had been shown to the jury, the trial court took a short recess and addressed counsel's absence from the courtroom without requesting permission or asking for a short recess. Counsel admitted to leaving the courtroom and apologized profusely. Counsel advised the trial court that he had previously viewed the exhibit. The questions asked of the witness during the playing of the exhibit were then read back to counsel, who advised the trial court that he had no objections to the questions.

After the jury heard the evidence and received the court's charge, the jury returned a verdict of guilty to the offense of robbery. The trial court then moved to the punishment portion of the trial. Prior to receiving testimony on punishment, the enhancement portion of the indictment was read, and appellant pleaded "true" to the enhancement allegations. The State also had given notice of other convictions of appellant and trial counsel stipulated to all of the other convictions save and except one from Bexar County, Texas. Counsel objected to that conviction based upon a discrepancy in the term of confinement within the judgment. One portion of the judgment referred to eight years imprisonment and another referred to six years

4

imprisonment.  The trial court overruled the objection.  The State proved up the Bexar County conviction through its fingerprint examiner.

After the State rested its presentation of punishment evidence, the appellant took the witness stand and testified on his own behalf.  The record reveals that, toward the end of appellant's direct testimony, he made a statement that he had had "a whole bunch of stuff that I would like to read out to the jury and to Ms. Lozoya."  At that juncture, trial counsel asked that appellant be permitted to read a statement to the jury.  At a bench conference that followed, the State said that there were ethical considerations that should discourage trial counsel from examining appellant about the statement.  The trial court asked the purpose of the statement.  Trial counsel stated, "To express remorse and- - and - - to - - to the jury basically is it.  I haven't read the statement completely."  The trial court advised he was not going to allow the statement to be read.  Trial counsel then inquired as to what were the ethical concerns by the State.  The State then expressed the thought that the only time it is permitted for a defendant to read a statement is when a client is going to perjure himself.  At that time, trial counsel stated, "No, I don't - - I haven't even read the statement."  The jury was then excused and the trial court examined the statement.  Subsequently, the statement was marked as Defense Exhibit 9 (D-9).  The jury was returned to the courtroom and, after appellant identified D-9 as his written statement and the statement was formally admitted into evidence, appellant read the same.  The statement can be generally characterized as a rather rambling apology and expression of remorse tinged with expressions of his inability to handle his depression, anxiety, and alcohol issues.  Contained within was a general reference by appellant that he was a good man who

5

made a terrible mistake. Also contained in D-9 is a statement by appellant that he is a Christian man. Subsequently, trial counsel went back to a question and answer format on direct examination. The thrust of these questions was a continued plea for the jury to accept appellant's remorse in assessing punishment.

The State's cross-examination of appellant was centered on his previous convictions. Through this cross-examination, the State demonstrated that several of appellant's prior victims were women. Additionally, cross-examination of appellant demonstrated that he had previously been placed on probation. Based upon appellant's testimony about apologizing to Lozoya and requesting forgiveness, the State requested permission to go into phone conversations that appellant had from the Lubbock County Detention Center. Specifically, he mentioned a conversation wherein appellant instructed his wife to take a gift card to Lozoya's grandmother.

Both parties subsequently rested on the issue of punishment. After the court's charge was prepared, both parties argued the issue of punishment. The State's opening argument focused on appellant's criminal history. During a discussion of appellant's criminal history, the State commented about a statement appellant made during his examination to the effect that the only reason he entered a plea of guilty to a robbery offense in Harris County was because he was facing 25 years. Counsel for the State followed that statement with an observation that "innocent people don't plead guilty to offenses they didn't commit." After concluding with another plea for extended punishment based upon appellant's criminal history, the State concluded its opening final argument on punishment.

6

Appellant's argument on punishment can be characterized as a plea for mercy. Appellant asked for the minimum sentence of 25 years based upon the theory that, at the end of the day, this case was a purse-snatching offense. Appellant's counsel admitted that Lozoya did suffer pain and some injury in the incident; however, he pointed out that there were no weapons of any type used in the commission of the offense. Trial counsel pointed out the various issues appellant was dealing with: alcoholism, depression, and anxiety attacks. He essentially asked the jury to take these issues into consideration in determining the proper punishment for appellant.

The State's closing argument was simply a plea for law enforcement that centered on appellant's criminal history. During the State's final closing argument, State's counsel made the following statement: "He said he was sorry and that he wants mercy, but at no point did he actually say this is my fault and I did this." This statement was made in the context of an argument pointing out the number of different reasons appellant gave for his conduct on the night in question.

After argument, the jury retired to consider their verdict on punishment. The jury eventually returned a verdict of incarceration in the ID-TDCJ for 99 years. Appellant filed a generic motion for new trial that was overruled by operation of law. Appellant perfected his appeal.

Appellant now contends that the judgment should be reversed because he received ineffective assistance of counsel. Contained within this issue are a multitude of sub-issues contending that various actions of trial counsel were defective. Appellant also contends that the imposition of the 99-year sentence was cruel and unusual

punishment. Finally, appellant contends that the trial court erred in allowing the State to present evidence of extraneous offenses which were not contained in the notice filed with the trial court. We will affirm.

Ineffective Assistance of Counsel

Applicable Law and Standard of Review

The United States Constitution's guarantee of the right to counsel encompasses the right to effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts apply the two-pronged test enunciated in *Strickland*, 466 U.S. at 687. *See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc). Judicial review of an ineffective assistance of counsel claim must be highly deferential, and there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. An appellant claiming ineffective assistance of counsel bears the burden of proving by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).[4] Failure to make the required showing of either deficient performance or sufficient prejudice is fatal to an ineffectiveness claim. *See id.*

---

[4] We note that there is a second type of ineffective assistance case where the prejudice is presumed when the actions of counsel result in a complete denial of counsel because "the presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied

8

The "right to effective assistance of counsel merely ensures the right to reasonably effective [not perfect] assistance." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (quoting, with alteration, *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (en banc)). This right does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight. *See Ingham*, 679 S.W.2d at 509. "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Robertson*, 187 S.W.3d at 483 (quoting *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992) (en banc)). Counsel's performance is judged by "the totality of the representation," and "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. *Id.* The *Strickland* Court cautioned us to avoid an intrusive post-trial inquiry into attorney performance because such an inquiry would encourage the proliferation of ineffectiveness challenges. *Id.* (citing *Strickland*, 466 U.S. at 690).

To that end, we are instructed that, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez*, 343 S.W.3d at 142. The court further advises, "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143.

---

counsel at a critical stage of his trial." *U.S. v. Cronic*, 466 U.S. 648, 659, 122 S. Ct. 1843, 152 L. Ed. 2d 657 (1984). This type of error will be discussed in a later portion of the opinion.

<u>Discussion</u>

Appellant contends that trial counsel's representation was deficient in a number of particulars. We will analyze the various contentions as appellant has presented them. These allegations of ineffective assistance fall into the following broad categories: (1) failure to effectively research and prepare for trial, (2) failure to object and preserve the record for meaningful post-conviction review, (3) failure to effectively advise appellant, and (4) failure to call witnesses. Each category contains more than one allegation of ineffective assistance of counsel, and we will view each allegation in turn.

<u>Failure to effectively research and prepare for trial</u>

Appellant contends that trial counsel failed to research and prepare for trial in two particulars. First, appellant contends that prior to voir dire commencing, the State advised the trial court and trial counsel that State's counsel had recently learned that the lead investigator, Cruce, had been the subject of allegations of violations of Lubbock Police Department policies. Further, Cruce was then in a grievance process with the Department over a letter of reprimand. The second instance of trial counsel's failure to research and prepare involved the surveillance video from the convenience store where the robbery occurred. Trial counsel, upon examining the records custodian, admitted he had not viewed the surveillance tape in real time. Rather, he viewed the tape as a series of still pictures. According to appellant's theory, each of these events should be viewed as acts of an ineffective counsel.

In reviewing a claim of ineffective assistance of counsel based upon the alleged failure of counsel to properly investigate and prepare for trial, we are guided by the United States Supreme Court decision in *Wiggins v. Smith,* 539 U.S. 510, 521-22, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). The Court in *Wiggins* reiterated that counsel "has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The Texas Court of Criminal Appeals has enunciated the same standard for review of a claim of ineffectiveness as a result of an alleged failure to make further investigation of a particular matter. *See Ex parte Martinez* 195 S.W.3d 713, 721 (Tex. Crim. App. 2006). We now apply this test to the claims set forth by appellant.

First, regarding the failure follow up on the allegations of violations of Departmental policies by the lead investigator, the record paints a somewhat different scenario of the events. State's counsel provided the information regarding Cruce to trial counsel on the Friday before trial. Trial counsel reviewed the material prior to trial and, based upon that review, made the following statement to the trial court: "Judge, I did receive this and . . . I appreciate the professionalism in bringing that to my attention . . . . I don't intend to go into that at this point unless something comes up. But at this point, I don't see any mileage for it." Implicit in this statement is that trial counsel has made a professional judgment that the information was not relevant to the trial.

The referenced colloquy highlights the decision made by trial counsel. Trial counsel had reviewed the material, and the essence of the statement was that it did not

11

provide the type of information that counsel thought would be of any value in front of the jury. Based upon the record before us, implicit in this determination, is a decision that the information would not be relevant for the purposes of cross-examination of Cruce. We use the term "implicit" because the record is silent on the matter save and except trial counsel's statement that he did not "see any mileage for it." Further, the trial court's decision to treat the information as governed by a motion in limine highlights the fact that, if the issue became relevant, trial counsel could, at that point in time, approach the bench and request permission to delve into the subject matter. The record is devoid of any evidence that would lead to the conclusion that this information could be used to impeach Cruce's motives for testifying as he did or that he held any bias or animus against appellant as a result of the information provided to trial counsel. Based upon the record before us, and with due regard to the heavy measure of deference given to counsel's judgment, we cannot say that it was not a reasonable decision. *See Wiggins,* 539 U.S. at 521-22; *Martinez* 195 S.W.3d at 721. Accordingly, appellant's contention is overruled.

Appellant also contends that the failure to view the surveillance video in real time reflected a failure to properly investigate the case. This was ineffective, according to appellant, because trial counsel failed to properly view key evidence to be used against appellant. Appellant, without citation or analysis, simply states that the viewing of the incident through a series of still pictures as opposed to the real time video was deficient performance by trial counsel. What is *not* discussed is important to our determination of whether trial counsel's actions were deficient. Specifically, appellant has not pointed out any part of the incident in question that was not captured by the series of still

12

photos. How this effected appellant's representation goes unsaid. While it may be true that trial counsel might have had a better understanding of the events if he had viewed the surveillance video in real time, such is not the test for an ineffective claim. The right to effective assistance of counsel does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight. *See Ingham*, 679 S.W.2d at 509.

Even were we to conclude that the failure to view the surveillance video in real time was ineffective, appellant has presented no argument as to how such an action prejudiced appellant. Accordingly, the second prong of the *Strickland* test, prejudice to appellant, has not been shown. *See Lopez*, 343 S.W.3d at 142; *Martinez* 195 S.W.3d at 721. Appellant's contention is overruled.

<u>Failure to object and preserve record for meaningful post-conviction review</u>

Appellant's issue complains of three separate instances where trial counsel failed to object to either questions being asked appellant, to arguments made by the State during the initial and rebuttal closing arguments, and to the admission of testimony regarding an extraneous offense. Initially we note that, when alleging ineffective assistance of counsel for failure to object, an appellant must demonstrate that the trial court would have erred in overruling an objection, if trial counsel had made one. *See Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Vaughn v. State,* 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (en banc) (per curiam).

The first incident that appellant relies on occurred during appellant's cross-examination by the State. A review of this testimony reveals that, appellant made

13

several statements during the punishment hearing direct examination about his being a good man and a Christian man who communicated regularly with God. As a result of these statements, the State asked the following questions, which appellant now contends injected State's counsel's personal beliefs and opinions about religion into the record:

> Q:    Okay. I want to talk for a minute about you told the jury that you were a good man, as good as me, the prosecutor, correct?
>
> A:    I didn't say as good as you. I said I would like to be considered almost as good as you.
>
> Q:    Okay. I - - it's immaterial. Okay. You may be as good of a man as I am, and you've got to take that up with God. Okay?
>
> A:    Yes, sir.
>
> Q:    But, you're not here - - we're not here to decide how good of a man you are. We're here to decide how much of a danger you are to society.

From a review of the record, the questions by the prosecutor, when viewed in the context of the direct examination, were not an attempt to inject his personal religious beliefs into the trial; rather, it was an attempt to cross-examine appellant about an area that appellant clearly opened up during direct examination. As such, we cannot say that the trial court would have erroneously permitted the testimony had an objection been offered. *See Martinez,* 330 S.W.3d at 901; *Vaughn,* 931 S.W.2d 566. Accordingly, we overrule appellant's contention.

The next two contentions of appellant deal with arguments made by the State during the opening of closing arguments on punishment and during the State's rebuttal argument in the punishment phase. Appellant initially directs the Court to the following

14

statement made during the State's opening final argument on punishment: "Members of the jury, innocent people don't plead guilty to offenses they didn't commit. We talked about this in voir dire a little bit. You just don't do it." The second incident of alleged ineffective assistance for failure to object to improper argument occurred in the State's rebuttal argument on punishment. On that occasion, the statement was "[Appellant] said he was sorry and that he wants mercy, but at no point in time did he actually say this is my fault and I did it."

As to the first incident, we question whether the trial court would have erred, had an objection been made, in overruling the objection. The record demonstrates that, when appellant was cross-examined about one of his prior convictions, he gave a non-responsive answer about whether the incident portrayed in the indictment was true. Rather than answer the question, appellant stated that "he accepted the plea bargain." When taken in context, the argument of the State would seem to be a proper subject for jury argument. *See Freeman v. State,* 340 S.W.3d 717, 727 (Tex. Crim. App. 2011) (setting forth the four areas for proper jury argument). The argument from the State seems to fall into the category of a proper plea for law enforcement. *See id.* Therefore, it is very questionable whether the trial court would have committed error had it overruled an objection, had one been made. *See Martinez,* 330 S.W.3d at 901; *Vaughn,* 931 S.W.2d 566. Further, the record before the Court is silent about whether trial counsel's failure to object to either comment was a matter of trial strategy and, if so, whether the strategy was sound. To find that trial counsel was ineffective would require that we engage in speculation, and such speculation is not permitted. *See Lopez,* 343 S.W.3d at 143-44. Because of the absence of any evidence in the record regarding the

trial strategy of counsel, we decline to find that trial counsel was ineffective for failure to object to the statements made by the State in final arguments. *See id.*

Next, appellant contends that the failure to object when the State argued that "[appellant] said he was sorry and that he wants mercy, but at no point in time did he actually say this is my fault and I did this." Appellant contends that such a statement was contrary to the evidence and very inflammatory. The record contains numerous times when appellant expressed remorse and offered reasons why he did what he did. Additionally, Cruce testified on cross-examination that appellant did initially take responsibility for the incident. However, on redirect examination, Cruce further stated that the expression of remorse occurred only after appellant had been arrested and was seated in the back of the patrol car. Also, during the direct and cross-examination of appellant, he offered numerous excuses for his conduct, such as depression, alcohol dependency, anxiety, and panic attacks. Under a review of the entire record, it is a fair conclusion that the State's argument was a summation of the evidence or a plea for law enforcement. *See Freeman,* 340 S.W.3d at 727. As such, it is doubtful that the trial court would have erred had it overruled any objection that might have been made. *See Martinez,* 330 S.W.3d at 901; *Vaughn,* 931 S.W.2d 566. As in the previous incident of failure to object, the record provides no hint of guidance as to the strategy of trial counsel in failing to object, and, without more in the record before us, we cannot enter into the type of speculation that would be required for us to find the failure to object was deficient performance by trial counsel. *See Lopez*, 343 S.W.3d at 143-44.

Appellant's last contention in the section regarding the failure of trial counsel to object and preserve the record for meaningful post-conviction review is the contention

that trial counsel failed to provide effective assistance of counsel when he did not object to the State's admission of testimony regarding appellant's arrest for fleeing a police officer. According to appellant, the State failed to provide timely notice of intent to use this information. However, the record on this issue is contrary to appellant's contention. The supplemental clerk's record reveals that, on February 21, 2014, the State filed a notice of intent to offer and introduce evidence of extraneous offense. Contained within this notice is a notice of intent to use "[a]ny and all information regarding the [appellant]'s arrest on February 16, 2014 for Fleeing a Police Officer." The record at the pre-trial hearing held on February 21, 2014, reveals that trial counsel was aware of the State's intent to use this information. During that hearing, there was a discussion regarding the misdemeanor charge of fleeing in which the State advised the trial court and counsel that it was rejecting the fleeing charge as an independent criminal violation but was planning on using the information in the trial of the instant robbery case. Such being the state of the record, trial counsel was not ineffective for failure to object to the testimony based upon the allegation that the State had not provided timely notice of intent to use the information. *Martinez,* 330 S.W.3d at 901; *Vaughn,* 931 S.W.2d 566. Inasmuch as this is the sole allegation of ineffectiveness regarding the extraneous offense testimony, appellant's issue is overruled.

Failure to effectively advise appellant

In this section of his brief, appellant contends that, on three separate occasions, trial counsel's failed to effectively advise appellant. Specifically, appellant contends that trial counsels actions fell below the accepted standards when he stipulated to three of four prior convictions of appellant. Next, appellant contends that trial counsel's actions

17

were ineffective when he absented himself from the courtroom during the questioning of the lead investigator. Finally, appellant contends that his trial counsel was ineffective because, according to appellant, appellant took the witness stand to testify "without any admonition as to how his testimony may impact his subsequent punishment."

At the beginning of the punishment portion of the trial, appellant entered a plea of "true" to the two prior convictions alleged in the enhancement paragraph of the indictment. Following the plea of "true," and brief opening statements by counsel, appellant stipulated to three of the additional four prior convictions that the State was prepared to prove up. Appellant contends that trial counsel's agreement to stipulate was an act of an ineffective counsel. In analyzing this allegation, the stipulation to three of the four convictions used against appellant, we note that again the record is silent as to what strategy trial counsel was pursuing when the stipulation was agreed upon. This silence is fatal to appellant's claim. *See Lopez*, 343 S.W.3d at 143-44*. Further, our review of the record supports the proposition that trial counsel was pursuing a strategy whereby appellant owned up to his past in an effort to lessen the likely penalty. If so, this would seem to be an appropriate trial strategy. However, the basic concern is that we simply do not know because the record before us is not developed. Trial counsel should be given the opportunity to explain his strategy. *See Menefield v. State,* 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). In a rather ironic twist, the same paragraph of appellant's brief next complains that trial counsel was deficient because he did not stipulate to the fourth prior conviction, the Bexar County conviction. According to appellant, this was ineffective assistance of counsel because "the State was forced to call a fingerprint expert witness to make the judgment admissible." However, appellant

18

has failed to mention that trial counsel made an objection to the Bexar County conviction based upon an anomaly in the judgment. The judgment appeared to say that the plea bargain was for eight years confinement, yet another portion of the judgment implied confinement for six years. Trial counsel took the position that it was possibly a void judgment. Under those circumstances, trial counsel could not stipulate to the judgment without waiving his argument on appeal relative to the efficacy of the judgment. In the final analysis, the entire question of whether trial counsel was ineffective because appellant stipulated to three of four prior convictions begs an essential question of prejudice. Nowhere in appellant's briefing does he point to any reason to expect that the State would not have been able to enter the prior convictions into evidence absent a stipulation. Therefore, the decision to stipulate cannot be shown to have altered the evidence before the jury and ultimately the outcome of the trial. *See Cerda v. State,* No. 01-05-00858-CR, 2006 Tex. App. LEXIS 9497, at *15-16 (Tex. App.—Houston [1st Dist.] Nov. 2, 2006, no pet.) (mem. op., not designated for publication).

The second allegation of ineffective assistance of counsel in this section deals with the actions of trial counsel in leaving the courtroom during the testimony of Cruce. This event occurred during the State's case-in-chief on guilt or innocence. The State had introduced the MVR into evidence. Subsequently, the State was publishing the MVR to the jury when trial counsel exited the courtroom. The State continued to examine Cruce and asked twelve questions between the time trial counsel left and returned to the courtroom. Trial counsel reentered the courtroom and immediately exited a second time. This time, the State asked four additional questions prior to trial

19

counsel returning to the courtroom for good. The State continued playing the balance of the MVR after trial counsel returned to the courtroom. The trial court then took a recess. During the recess, trial counsel's absence from the courtroom was discussed. After apologizing to the trial court, trial counsel explained why he felt he had to leave the courtroom. His explanation revolved around his perceived need to speak to appellant's wife. Subsequently, trial counsel reviewed the questions that were asked during his absence and stated he had no objection to those questions. The record reveals that the trial court stated on the record that trial counsel was absent from the courtroom for approximately three minutes. Further, the trial court stated that the questions asked during that time had to do with the MVR, which trial counsel had previously viewed. There is no question that trial counsel's absence during the playing of part of the MVR and questioning of Cruce fell beneath any objective standard of reasonableness under prevailing professional norms. *See Strickland,* 466 U.S. at 687. However, that is not dispositive of this matter. We must decide if there was prejudice or, indeed, any need to show prejudice. To do this, we first review the record.

The following questions were asked of Cruce during trial counsel's absence:

(State's Exhibit 4 was played.)

Q. Officer Cruce, I noticed that you came around the back of the Stripes. Did you all have information about a Monte Carlo?

A. Yes, sir.

Q. And did you later determine that that vehicle had nothing to do with the [appellant]?

A. Yes, sir.

Q. Okay. So that was just information from a 9-1-1 call that turned out to be incorrect?

20

A. Yes, sir.

Q. Okay.

(State's Exhibit 4 was played.)

Q. Okay. You're saying stand up. Is that to the [appellant]?

A. I don't believe that was me saying stand up.

Q. Oh okay. Somebody else - - was somebody else getting the [appellant] to stand?

A. Yes, sir.

Q. Okay. And so he's still on the ground from - - from before?

A. Yes, sir.

(State's Exhibit 4 was played.)

Q. And that's not you speaking, is it?

A. Asking for her ID, yes.

Q. Okay.

A Yes, it is.

Q. Was that also Curtis Fish speaking as well?

A. Fish was talking to her prior to me.

Q. So your mike is picking up Curtis as well?

A. Yes. Yes, sir.

Q. Okay.

(State's Exhibit 4 was played.)

([Trial counsel] entered and exited the courtroom.)

Q. Okay. We can see officers walking around over here, looking around. Is that the [appellant's] truck?

A.    Yes, sir.

Q.    Okay.  We can talk a little bit more about that later.  But this truck - - this Chevy Silverado, was it?

A.    I don't believe - - I know it was a pickup.  I don't know exactly the make and mo[d]el.

Q.    Okay.  But this is the truck that the [appellant] came into the store, correct:

A.    Yes.

Q.    Okay.

(State's Exhibit 4 was played)

([Trial counsel] entered the courtroom.)

Trial counsel was then present in the courtroom for the balance of the time it took to publish State's Exhibit 4.

Appellant's contention is summarized by the following statement: "To be clear, [appellant] did not merely receive ineffective assistance of counsel, he received nonexistent assistance of counsel."  From this statement, it is appears, to the Court, that appellant is contending there was a total absence of counsel so as to bring our consideration of this issue under the guidelines of *United States v. Cronic,* 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).  *Cronic* was a companion case to *Strickland;* however, in *Cronic* the question before the Supreme Court was whether counsel's representation was such that, even without a showing of prejudice, it might be presumed to have occurred.  *See id* at 668.  Under the analysis developed in *Cronic*, such would be the case when counsel was absent during a critical stage of the trial.  *See id.* at 659.  Case law has developed to instruct us that a determination of whether

the absence of counsel has occurred at a critical stage is dependent upon whether the evidence presented during counsel's absence was directly inculpatory of the defendant. *See U.S. v. Russell,* 205 F.3d 768, 772 (5th Cir. 2000) (holding that the *Cronic* presumption should apply where counsel was absent for two days during which "the probability of his guilt increased during the government's presentation of evidence against his co-conspirators).

Our review of the record leads us to conclude that we are not faced with that type of situation. The evidence adduced during trial counsel's absence was best described as background information relating to the initial observations of the lead officer. Rather, the facts of this case are more in line with the facts in *Sylvia v. State,* No. 03-10-00366-CR, 2011 Tex. App. LEXIS 7849, at *16-18 (Tex. App.—Austin Sept. 29, 2011, pet. ref'd) (mem. op., not designated for publication). In *Sylvia,* the appellant had been convicted of indecency with a child. During the bench trial, trial counsel for Sylvia was absent from the courtroom during the playing of the Chidren's Advocacy Center (CAC) interviews of the minor children. *See id.* at *3-4. On appeal, Sylvia contended that trial counsel's absence during the playing of the CAC interviews should be viewed as a constructive denial of his rights to counsel. *See id.* at *16. The Austin court held that the viewing of the CAC tapes was not a critical stage in the bench trial because they had already been admitted into evidence. *See id.* at *18. While there was no jury in *Sylvia*, as it was a bench trial, the facts are markedly similar. Furthermore, our review of the evidence leads us to conclude that the questions asked while counsel was absent were not inculpatory and, accordingly, the second prong of the *Strickland* analysis must be met. That is to say, trial counsel's deficient performance must have prejudiced

appellant. *See Strickland,* 466 U.S. at 687. Appellant fails to allege any facts that would lead us to conclude that the momentary absence of trial counsel prejudiced appellant's trial. Our review of the record, likewise, does not demonstrate any prejudice to appellant during the absence of trial counsel. Accordingly, appellant's contention is overruled.

Appellant's final issue in this section contends that trial counsel provided ineffective assistance by failing to advise appellant about the dangers of testifying during the punishment phase of the trial. The contention appears to have two parts: first, the general failure to admonish appellant about cross-examination by the State and what could develop from such an examination; second, the failure to advise appellant regarding a statement that appellant had drafted and requested permission to read while testifying on direct examination. Appellant makes a global assertion that his testifying during punishment phase allowed the State to take up a matter that had been the subject of a motion in limine. This, according to appellant, impacted the jury in some manner. Exactly how this information prejudiced appellant goes unsaid. The record is clear about one aspect: appellant's testimony did not affect the State's ability to introduce his prior convictions. They were introduced prior to appellant's testimony. Even though appellant stipulated to all but one of the prior convictions, there is nothing in this record to indicate that the State was not going to be able to introduce those convictions absent appellant's stipulation.

There is nothing in the record that indicates what actions trial counsel took to advise his client of the dangers of testifying. Appellant now asks this Court to speculate that there was a failure to advise appellant. This is the very type of speculation we are

24

prohibited from engaging in. *See Lopez*, 343 S.W.3d at 143-44. The record must affirmatively establish counsel's deficiency. *See id.* at 142. The record before us is silent. Accordingly, we cannot find that trial counsel's representation fell below an objective standard of reasonableness. *See id.* Accordingly, we overrule appellant's contention to the contrary.

Failure to call witnesses

Appellant's final issue in the area of ineffective assistance of counsel contends that trial counsel's failure to call witnesses to testify on appellant's behalf constituted ineffective assistance of counsel. Appellant contends there were two types of witnesses that trial counsel should have called to testify on his behalf. First, appellant contends that the failure to call medical experts to support his testimony that he suffers from depression and anxiety was ineffective assistance of counsel. Second, appellant contends the failure to call any witness to testify on behalf of appellant personally was ineffective assistance.

In the area of claims of defective performance by counsel for failure to call witnesses, the general rule is that failure to call witnesses does not constitute ineffective assistance of counsel without a showing that the witnesses were available to testify and that their testimony would have benefited appellant. *Cate v. State,* 124 S.W.3d 922, 928 (Tex. App.—Amarillo 2004, pet. ref'd) (per curiam) (citing *Butler v. State,* 716 S.W.2d 48, 55 (Tex. Crim. App. 1986) (en banc)). The record before this Court contains nothing regarding potential medical witnesses: no names of witnesses, nothing to indicate that said witnesses would have been available to testify, and nothing regarding

what their purported testimony would have been or how it would have benefited appellant. In short, the record has not been developed to allow this Court to properly pass on this claim. As to personal witnesses, there is a reference to appellant's wife. Yet, here again, there is nothing in the record about what her testimony would have been. There is some reference in the record to appellant's wife having a hard time communicating in English. There is nothing to point out what her testimony would have been. There is simply no way for the Court to conclude that trial counsel's failure to call the witnesses suggested by his briefing was a deficient performance. *Id.* Appellant's contention to the contrary is overruled.

In the concluding paragraph of appellant's brief on the failure to call witnesses, appellant cites the Court to *Green v. State,* 899 S.W.2d 245, 247-48 (Tex. App.—San Antonio 1995, no pet.), for the proposition that reversible error can be shown when "trial counsel's errors are so fundamental with such far-reaching implications that no one could excuse them as 'trial strategy' because no reasonable lawyer would do them." This sentence from the case seems to be cited to the Court to lead us to find some sort of cumulative error present that would entitle appellant to a reversal. Two observations are in order. First, although the language is in the opinion, ultimately, the San Antonio court found ineffective assistance on the failure of trial counsel to request the mistake of fact defense. *Id.* at 248-49*.* Second, the "Other Errors" portion of the opinion deals with failures of trial counsel substantially different from those alleged in appellant's brief, such as the failure to object to the omission of the definition of knowingly from the charge, which the court pointed out went to the criminal intent of appellant's actions; failure to file any pretrial discovery motions; and failure to object to the showing of the

appellant's mug shot for unrelated offenses when identity was not an issue. *Id. at* 249. The court concluded that there was no reasonable trial strategy for any of these failures. *Id.* As we have pointed out above, many of the contentions raised by appellant in this appeal are subject to the trial strategy question that is often implicated by allegations of ineffective assistance of counsel. *See Menefield,* 363 S.W.3d at 593. In the final analysis, the court in *Green* found trial counsel ineffective for failure to pursue the mistake of fact defense. We do not read *Green* to support a cumulative error holding in this case. Having addressed each alleged incidence of ineffective assistance of counsel individually, we decline the invitation to find cumulative error.

Having overruled all of appellant's contentions regarding ineffective assistance of counsel, we overrule appellant's first issue.

## Cruel and Unusual Punishment

Appellant's second issue is that the trial court's imposition of the 99-year sentence amounted to cruel and unusual punishment under the Eighth Amendment to the United States Constitution; Article I, Section 13 of the Texas Constitution; and Article 1.09 of the Texas Code of Criminal Procedure. Following the return of the jury's punishment verdict, the trial court sentenced appellant to a term of confinement in the ID-TDCJ for a term of 99 years. Appellant contends that such a punishment, in light of the mitigation testimony that appellant suffers from depression, anxiety, and panic attacks was grossly disproportionate and, thus, was cruel and unusual punishment.

The record reveals that appellant made no objection to the sentence based upon the contention that the sentence was grossly disproportionate or violated the prohibition

27

against cruel and unusual punishment. Our rules of appellate procedure require that the trial court be made aware of any complaint via a timely objection, or motion that stated the grounds for an objection and the requested ruling. TEX. R. APP. P. 33.1(a)(1). The failure to make such an objection or motion that states the grounds for the objection to the ruling results in a waiver of the point on appeal, including many constitutionally protected rights. *See Anderson v. State,* 301 S.W.3d 276, 280 (Tex. Crim. App. 2009). Specifically, a complaint about cruel and unusual punishment is subject to the preservation requirement. *Wise v. State,* 223 S.W.3d 548, 554 (Tex. App.—Amarillo 2007, pet. ref'd). As a consequence of the failure to object, nothing has been preserved for appeal and we overrule appellant's issue.

Extraneous Offense

Appellant's final issue contends that the trial court erred in allowing the State to introduce evidence of the extraneous offense of fleeing a police officer. As a basis for this issue, appellant contends that the State failed to provide notice of its intent to introduce the extraneous offense. We have previously dealt with this allegation above. The record does not support appellant's contention. The supplemental clerk's record reveals that on February 21, 2014, the State filed a notice of intent to offer and introduce evidence of extraneous offense. Contained within this notice is a notice of intent to use "[a]ny and all information regarding the [appellant]'s arrest on February 16, 2014 for Fleeing a Police Officer." Accordingly, appellant's issue to the contrary is overruled.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.


Mackey K. Hancock
Justice


Publish.

FILE COPY

No. 07-14-00202-CR

| | | |
|---|---|---|
| Emilio Rodriguez<br>  Appellant | § | From the 364th District Court of<br>  Lubbock County |
| | § | |
| v. | | February 25, 2015 |
| | § | |
| The State of Texas<br>  Appellee | § | Opinion by Justice Hancock |
| | § | |

**J U D G M E N T**

Pursuant to the opinion of the Court dated February 25, 2015, it is ordered, adjudged and decreed that the judgment of the trial court be affirmed.

Inasmuch as this is an appeal *in forma pauperis*, no costs beyond those that have been paid are adjudged.

It is further ordered that this decision be certified below for observance.

o O o