

# NUMBERS 13-20-00183-CR & 13-20-00184-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**RICHARD VONZELL HAWES A/K/A
RICHARD VONZELL HAWES JR.,**            **Appellant,**

**v.**

**THE STATE OF TEXAS,**            **Appellee.**

---

### On appeal from the 290th District Court of Bexar County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Tijerina Memorandum Opinion by Justice Longoria

Appellant Richard Vonzell Hawes a/k/a Richard Vonzell Hawes Jr. appeals his convictions for burglary of a habitation with the intent to commit an assault and two counts of aggravated assault with a deadly weapon.[1] *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2),

---

[1] Appellant was tried for two counts of burglary of a habitation with the intent to commit an assault

30.02. In one issue, appellant argues that he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND[2]

In appellate cause number 13-20-00183-CR, the indictment alleged that on or about May 20, 2019, appellant "did intentionally and knowingly enter a habitation, with intent to commit an assault, without the effective consent of" the owners, Amanda Otero and Raeshane Wilson, and "therein attempted to commit and committed an assault against" Otero and Wilson. In appellate cause number 13-20-00184-CR, the indictment alleged that on or about May 20, 2019, appellant "did use and exhibit a deadly weapon, NAMELY: A KNIFE, THAT IN THE MANNER OF ITS USE AND INTENDED USE WAS CAPABLE OF CAUSING DEATH AND SERIOUS BODILY INJURY, and [appellant] did intentionally and knowingly THREATEN IMMINENT BODILY INJURY" to Otero and Wilson. Appellant waived his right to a jury trial in both cause numbers, and a bench trial was held.

Officer Jeffery Gallegos of the Balcones Heights Police Department testified that he was dispatched to an apartment on May 20, 2019, for an assault in progress. Upon arriving at the apartment, Officer Gallegos found "two victims, a lot of blood, and a female that needed emergency care." The female, Otero, was treated by emergency medical

---

in trial court cause number 2019CR10079, which relates to appellate cause number 13-20-00183-CR, and two counts of aggravated assault with a deadly weapon in trial court cause number 2019CR10080, which relates to appellate cause number 13-20-00184-CR. The causes were tried together and will be addressed in this one memorandum opinion.

[2] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

services for what Officer Gallegos agreed was a "serious situation," as she had been stabbed several times.

Otero informed Officer Gallegos that she knew one of the attackers, whom she identified as appellant, but she was unable to identify the female who was with appellant. Officer Gallegos stated that Otero first said she was "cut" by the female but then stated it was appellant who cut her. Otero also informed Officer Gallegos that she had seen appellant and the female accomplice at a nearby gas station earlier in the day, but Officer Gallegos was unable to locate them at that location. Officer Gallegos obtained surveillance video footage from the gas station, and he testified that the footage confirmed that appellant and the unknown female accomplice were at the gas station.

On cross-examination, Officer Gallegos stated that he did not locate any knives that were used in the attack in the apartment. He further explained that the door to the apartment was damaged, appearing to have been kicked in. Officer Gallegos observed injuries on Wilson as well; specifically, he had swelling to his face, including his mouth and nose. Wilson told Officer Gallegos that he had been punched in the face by appellant, but Wilson did not mention a knife.

Wilson testified that he and Otero had lived together and they were in a romantic relationship when the assault occured. The night of the attack, he heard a loud knock on the apartment door but he did not see anyone through the window. Otero also looked out the window, yelled out "Rich," and began to unlock the door. Wilson stated that as Otero started to unlock the door, the door was kicked in and appellant and a female came in, both with knives. Wilson stated that appellant punched him in the face with his right hand

3

while holding the knife in his left. Wilson said he was "terrified, like really scared" as appellant continued to hit him. Appellant had "kind of a big knife, kind of like—I mean, like a machete or something." He could not identify the woman who was with appellant. At the time of trial, Wilson testified that he had prior felony convictions and that he was currently incarcerated, having been accused of assaulting Otero in a separate incident.

Otero testified that she had been in a relationship with appellant prior to her relationship with Wilson. After her relationship with appellant ended, they kept in contact. She testified that appellant was "good" to her in their relationship. She also admitted that Wilson was not always "a good man" to her, and there had been instances of physical violence. Otero stated that on the day of the attack, she had gone to the local store to purchase beer. She had had "a beer or two," and she admitted that she occasionally used methamphetamines and marijuana, but had not done so that day. After she purchased the beer, a car stopped near her, with appellant in the passenger's seat and the unknown female in the driver's seat. She believed appellant was drunk at the time. The female was "talking smack" and Otero testified that they exchanged words with one another, but nothing physical occurred.

Shortly after she returned to her apartment, there was a knock on her door, and she saw appellant outside. She stated that as she opened the door, the unknown female "came out" and both appellant and the female had knives. Though she tried, she was unable to close the door. The female attacked Otero, and Otero attempted to fight back. She also saw that Wilson and appellant were fighting. During the altercation with the

4

female, the female stabbed Otero three times. Otero testified that appellant did not stab her. Otero explained that the female had a small knife and appellant had "a hunting knife."

Appellant testified that on the night of the incident, he and the unidentified female[3] went to the gas station and that Otero had been repeatedly calling him. After leaving the gas station, appellant and the female saw Otero and decided to stop their vehicle to "see what she want[ed]." Appellant testified that no verbal altercation occurred. He explained that he had been to Otero's apartment in the past and had "intervened" in altercations between Otero and Wilson to "keep it from getting physical." He also explained he had been present in the past when the police were called because of incidents between Otero and Wilson. He denied being at Otero's apartment on the night of the assault and explained that he and the female went to a friend's house that evening. He testified that he believed that Otero may have fabricated the story against him because she was "pretty upset that [he] was with another woman."

On cross-examination, appellant discussed his criminal history, which involved violent offenses. He also admitted that he was "a little intoxicated" on the evening of the incident, but he stated that he remembered the events of the day "for the most part."

The trial court found appellant guilty on one count of burglary of a habitation with the intent to commit an assault and both counts of aggravated assault with a deadly weapon. The trial court entered an affirmative finding of a deadly weapon as to the assault charges and appellant was sentenced to fifteen years for each count, to run concurrently. This appeal followed.

---

[3] Appellant could not recall the last name of the female, though he identified her as "Sarah," a woman he had briefly dated.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his sole issue, appellant contends that he received ineffective assistance of counsel, arguing specifically that counsel was deficient when he: (1) elicited testimony during cross-examination from Wilson "which proved the otherwise-unproven deadly weapon allegation," and (2) failed to object to the admission of the un-redacted police body-cam video.

### A.    Standard of Review

To prevail on a claim of ineffective assistance of counsel, appellant must establish by a preponderance of the evidence that: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) appellant was prejudiced by trial counsel's defective performance. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To determine whether trial counsel's performance was deficient, we look to the totality of the representation and the particular circumstances of the case. *Id*. at 813. Our review of trial counsel's performance is "highly deferential," and we indulge a "strong presumption" that trial counsel's conduct fell within a wide range of reasonable representation. *Id*. "To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Id*. at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Consequently, a direct appeal usually is an inadequate vehicle for raising a claim of ineffective assistance of counsel because the record is generally undeveloped as to why trial counsel did what he did. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.

6

Crim. App. 2005); *Thompson*, 9 S.W.3d at 814 n.6 ("[I]n the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*."). Where, as here, the record is silent as to trial counsel's strategy, we will not conclude appellant received ineffective assistance of counsel unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), cert. denied, 537 U.S. 1195 (2003)).

## B.    Deadly Weapon Testimony

By appellant's first sub-issue in his ineffective assistance of counsel claim, he argues that his counsel was deficient in eliciting testimony from Wilson that was "unnecessary to the defense and gratuitous gifts to the State" in proving the knife used in the assault was a deadly weapon. The specific exchange appellant complains of is as follows:

[Defense Counsel]:    What sort of knife did [appellant] have in his hand?

[Wilson]:    It was kind of a big knife, kind of like—I mean, like a machete or something.

[Defense Counsel]:    Like a machete. Does that mean that the knife had a handle and a blade that stuck out from the handle? It didn't fold over or anything?

[Wilson]:    No, I don't think it folded over.

[Defense Counsel]:    But is it your testimony that [appellant] never cut you with this knife?

[Wilson]:    No, he didn't.

7

Appellant argues that without this testimony, there was no descriptive testimony regarding the knife, and thus, counsel was ineffective for proving up the deadly weapon finding for the State.

While it is well settled that a knife is not a deadly weapon per se, it can be a deadly weapon if the person using it intends to use it in a way in which it would be capable of causing death or serious bodily injury. *Williams v. State*, 575 S.W.2d 30, 32 (Tex. Crim. App. 1979). When no actual injury is sustained by the victim, the State must introduce evidence of other factors to establish that the knife is a deadly weapon. *Victor v. State*, 874 S.W.2d 748, 751–52 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The factors to consider include the size, shape, and sharpness of the knife; the manner of its use or intended use; the nature or existence of inflicted wounds; evidence of the knife's life-threatening capabilities; the physical proximity between the victim and the knife; and any words spoken by the one using the knife. *See Thomas v. State*, 821 S.W.2d 616, 619–20 (Tex. Crim. App. 1991); *Fortenberry v. State*, 889 S.W.2d 634, 636–37 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). The State does not have to introduce the knife into evidence to prove the knife was a deadly weapon. S*ee Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982). As the Texas Court of Criminal Appeals explained in *Prichard v. State*, under the broad language in Texas Penal Code § 1.07(a)(17)(B), "a 'deadly weapon' may be 'anything,' and there is no limitation as to what type of thing may be considered a deadly weapon." 533 S.W.3d 315, 320 (Tex. Crim. App. 2017). Thus, generally speaking, the nature of the object itself does not limit whether that object may be a deadly weapon; rather, it is only the "manner of [the defendant's] use or intended

use" that provides any meaningful limitation to the broad statutory definition. *Flores v. State*, 620 S.W.3d 154, 159 (Tex. Crim. App. 2021).

In *McCain v. State*, the Texas Court of Criminal Appeals reasoned that the evidence was sufficient to find that a butcher knife was a deadly weapon even though the knife remained in the defendant's back pocket during the robbery and the defendant never made any verbal threat to use the knife. 22 S.W.3d 497, 499 (Tex. Crim. App. 2000). *McCain* involved a violent attack wherein the defendant kicked in the victim's kitchen door and began punching her. *Id*. During the attack, the victim saw what she believed to be a knife sticking out of the defendant's back pocket. *Id*. She was afraid that the defendant would stab her with it. *Id*. In holding that the evidence was sufficient for finding that the knife was a "deadly weapon," the Court reasoned in *McCain* that the statute does not require that the actor actually intended death or serious bodily injury; the actor need only "intend[] a use of the object in which it would be capable of causing death or serious bodily injury." *Id*. at 503. The "placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *Id*.

Here, the State elicited testimony from both Wilson and Otero that appellant was holding a knife when he forced his way into Otero's apartment and began assaulting Wilson. No information regarding the size, shape, or sharpness of the knife was elicited on direct examination. Assuming without deciding that it was error for counsel to elicit this testimony on cross-examination, we find no prejudice to appellant.

9

To establish prejudice, appellant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. Appellant alleges that without Wilson's testimony describing the size of the knife, the trial court would not have been able to enter an affirmative deadly weapon finding. We disagree. Given Wilson's testimony regarding the nature of the assault and Otero's testimony that appellant had a "hunting knife," we cannot say that there is a reasonable probability of a different outcome had counsel not elicited the testimony at issue. *See id.*

## C.  Body-Camera Footage

By appellant's second sub-issue in his ineffective assistance of counsel claim, he argues that his counsel was deficient in his failure to object to the unredacted footage from Officer Gallegos's body camera. Appellant argues that the footage is "replete with references to [his] prior irrelevant arrests" and "derogatory statements" about his character. Appellant concedes that he is unsure what portions of the video footage were reviewed by the trial court as the factfinder but asserts that the video "is so outrageous that no competent attorney would have failed to object."[4]

To succeed on claims of ineffective assistance of counsel for failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection if trial counsel had objected. *See Vaughn v. State*, 888 S.W.2d 62, 74 (Tex. App.—Houston [1st Dist.] 1994), *aff'd*, 931 S.W.2d 564 (1996) (per curiam)

---

[4] The record reflects that portions of the video were played in open court, indicating the start time for each portion, but not when the video was stopped.

(en banc). But even if unobjected-to evidence is inadmissible on some basis, trial counsel may have a sound trial strategy in not objecting to evidence that counsel feels is relevant to appellant's defense, or not harmful to appellant. *See Stafford v. State*, 813 S.W.2d 503, 507–08 (Tex. Crim. App. 1991) (en banc); *see also Calderon v. State*, 950 S.W.2d 121, 130 (Tex. App.—El Paso 1997, no pet.); *Henderson v. State*, 704 S.W.2d 536, 538 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) (observing that failing to object to the introduction of improper evidence can be a trial strategy). The record provides no hint of guidance as to the strategy of trial counsel in failing to object, and, without more in the record before us, we cannot enter into the type of speculation that would be required for us to find the failure to object was deficient performance. *See Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011); *Rodriguez v. State*, 459 S.W.3d 184, 195 (Tex. App.—Amarillo 2015, pet. ref'd).

To that end, we are instructed that, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez*, 343 S.W.3d at 142. "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id*. at 143. Even if we were to conclude that the failure to object to the body-camera footage was ineffective, appellant himself testified regarding his criminal history and prior arrests. The Texas Court of Criminal Appeals has explained that "it is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection . . . ." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (quoting *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984)).

Accordingly, appellant has not shown he was prejudiced by the failure to object. *See*

*Lopez*, 343 S.W.3d at 142.

We overrule appellant's sole issue.

### III.   CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
24th day of June, 2021.